The 8th case this morning, Davidescu v. Lynch.  I represent the appellant Andrei Davidescu, who is a 27-year-old Roma from Moldova who petitions for review of his asylum denial. The first basis for his petition is that the board erred when neither the board nor the The judge considered a lot about whether or not what had happened to him in the past had risen to the level of persecution, but she never addressed whether or not he would suffer future persecution. And a reasonable person would fear severe and pervasive discrimination and persecution based on their ethnicity if they were sent back to Moldova. The board also erred in finding that there was no evidence of a pattern or practice of persecution against the Roma in Moldova. There's no question that there's discrimination against the Roma in Moldova. The question is whether its severity rises to the level of persecution, and we would argue that it does. It's systemic and severe. This is a historically marginalized group that is singled out based on their ethnicity. They are discriminated against by private actors, but also the government is a very big actor in discrimination and persecution against this group. Where does that show in your factual that the government was involved? Well, the government runs the schools and the hospitals and the police. Well, all right. He was hospitalized and there was no complaint about his hospitalization, was there? No, he did not have a complaint about his hospitalization. And the police? Go ahead. No, you go ahead. And he talked to the police. They took his information. They took his information, but they didn't do anything. Well, all right. Where's the positive indication that they were persecuting him because of his background, that the state was? Well, I'm talking about the pattern or practice of the state persecution of all Roma in Moldova. Okay. So generally, we understand that's the general point, but who were the state actors that were behind some of these beatings he had? When some of the things occurred at school, did he go and complain? You mentioned that they run the institutions. Okay, we give you that, but where do you show any kind of connection other than the general bias against Romas? I would say the police and how they never took any actions to help him. And how many times did he complain? I believe he went to the police twice. Well, you certainly document individuals. Right. But I don't see any documentation of any similar level by state actors. The actions of the government in terms of the schooling, the hospitals, and police protection, they created a permanent underclass of Roma in Moldova. And so there's clearly a pattern of practice of severe discrimination, which rises to the level of persecution. What was his education? It seemed to me he did pretty well. Yeah, he started college. Which is different than what seemed to be the case of most people. That's right. One out of two Roma do not attend any school, including elementary school. And that, I think, kind of weighs a little bit against this position because maybe he had to do something extraordinary, whatever he did, but he did achieve and got his degrees and do whatever system that is probably controlled by the government. That's true. But he, again, he's one among, he's an exceptional person among the Roma in that he was able to go to college. And that still won't help him when he goes back and attempts to apply for employment or live in certain neighborhoods. He'll be discriminated against. Yeah, it's hard to get a job over there, period, I guess. Yeah, but it's even harder when you're a Roma. Even harder for him. Yeah. Their rate of unemployment is much higher than that of the general population. So what are we to do with these various inconsistencies that the immigration judge clearly spelled out, you know, with respect to injuries, with respect to how things happen, that report, that August 09 incident when there was a letter from his lawyer and the police that say he was pushed and insulted. They confirmed that, but not beaten as he testified their inconsistencies that were pointed out, and that led to the adverse credibility finding. That's correct. And I would just say in terms, I don't know what the letter from the lawyer from the Roma Center was about specifically, but the, he can't have any control over how the police wrote up their report on what happened to him. But there were other, there were other, like, conflicting accounts of his injuries following the 2-6 and the April 09 incident. Yeah, what happened? And the severity of treatment he suffered in terms of interactions. In April 09, he was beaten up and he suffered a cerebral contusion and he went to the hospital and the hospital said that he was unconscious when he was brought in. The immigration judge asked him if he was conscious when he was brought into the hospital and he said yes. And she considered that to be a significant inconsistency, whereas I would argue that it happened three and a half years earlier and I don't know that someone who suffered a cerebral concussion would know, you know, at what point they regain consciousness. I just don't think that's something that's so significant that it withdraws from his case. I'll reserve the rest of my time. All right, thank you. Mr. Meyer. Jeffrey Meyer for the respondent, Your Honor. May it please the Court. Substantial evidence supports the agency's decision to deny Petitioner's asylum due to lack of credibility and the lack of untainted corroborating evidence. As the Court has already suggested, he testified inconsistently about the details of his alleged misconduct. He testified that when he was 18, he was beaten by classmates in June of 2006. He was repeatedly asked about his injuries and he said he sustained bruises on his legs and torso. And that testimony is inconsistent with his written statement that says he had a fractured nose and a torn lip. He testified that he did not go to police following that incident in June of 2006. His written statement, however, indicates that he called the police and when he was asked about those inconsistencies, he offered yet another version that the police were not called, but he stopped at the police station on his way home. Petitioner's claim that he was attacked in April 7 of 2009 by neighboring villagers, and he concedes he testified inconsistently when he indicated that he went to police after the attack and was told that they'd file a report. He later testified that the police arrived at the scene and he later testified that after the police arrived at the scene he was detained and taken to the police station where he was beaten by police. And the agency properly rejected his explanation for that omission that he forgot is insufficient. The record doesn't compel reversal of the agency's determination that he failed to present available cooperating evidence. He's been in contact with both his parents who are still in his homeland and there's no letter that sets forth any of this past harm regarding the petitioner. He has a letter from his father that is only unsworn and not properly translated, but details only harm to his father is apparently beaten after he refused to give money. But there's no mention of any harm to the petitioner. And as the court has already suggested, there's no state actor that would really support a pattern and practice claim nor is the level of marginalization and discrimination sufficient under the Seventh Circuit case law that talks about the extreme nature of persecution necessary for a pattern and practice claim. What was his profession or employment over here, do you know? I don't know. I know he came over on a worker exchange visa which expired. But I don't know what his employment was. Well, obviously his opportunities for employment when he goes back aren't very good, but that's to be expected, I guess. Yeah, I guess so. It's just the nature of Roma or whatever. But I just wondered if he had something going over here that really would merit his having some reason to stay here and help somebody or do something. Not that I'm aware of, Your Honor. I have nothing further unless the court has questions. Thank you. Thank you. How much time? Yeah, three minutes. Three minutes. I just wanted to address the question of sufficient corroborating evidence. This is a gentleman, his dad was beaten on June 10th. He filed his application. He considered that a changed circumstance. He filed his application for asylum on September 4th. The asylum office said he did not apply within a reasonable time after the changed circumstance, although it was less than three months. On November 7th, he had his master calendar hearing before the immigration judge, and she set the individual hearing date for 14 days later. Now, it's true that his lawyer did accept the expedited date, but under the Executive Office for Immigration Review's regulations, there's supposed to be not less than 45 days between the master calendar hearing and the individual hearing. So, because there were only 14 days, he had already missed the 15-day limit. All documents to the court must be submitted 15 days before the individual hearing. So, I think that's a good explanation of why he didn't have additional corroborating evidence, because he could have gotten nothing more within 14 days from Moldova. What did you say about the changed circumstance? The asylum office found that his dad... So, he applied for asylum more than one year after he arrived, and the asylum office agreed that that was a changed circumstance that his dad's attack did qualify as a changed circumstance, which would excuse him from the one-year deadline. But you have to file for asylum within a reasonable time after the changed circumstance, and they said three months was too long. Thank you. Thanks to both counsel. The last case is...